UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROLANDO LOPEZ MARTINEZ, *on behalf of himself and all other persons similarly situated*,

                 Plaintiff,

– against –

PARKASH 2125 LLC, ANURAG PARKASH, *and* VED PARKASH,

                 Defendants.

**OPINION & ORDER**

23-cv-05097 (ER)

RAMOS, D.J.:

    Rolando Lopez Martinez brought this action against Parkash 2125 LLC, Anurag Parkash, and Ved Parkash ("Defendants") on June 16, 2023. Doc. 1. Lopez Martinez was employed by Defendants as a live-in building superintendent at a residential apartment building in the Bronx, New York, *id.* ¶ 26, claimed that Defendants failed to pay him the lawful minimum wage and overtime compensation, and failed to provide proper wage and notice statements, in violation of the Fair Labor Standards Act ("FLSA") the New York Labor Law ("NYLL"), and the Wage Theft Prevention Act. *Id.* ¶¶ 48–64.

    After engaging in mediation efforts that were unsuccessful, Doc. 54 at 2, on February 7, 2024, Defendants filed an answer to the complaint, in which they asserted affirmative defenses as well as counterclaims against Lopez Martinez pursuant to the faithless servant doctrine. Doc. 22. Defendants alleged, in part, that Lopez Martinez engaged in "breach of fidelity and disloyal acts" from approximately January 2020 until January 29, 2024—the date on which Defendants terminated him, allegedly for cause. *Id.* ¶ 62.

    On February 21, 2024, Defendants, as owners of the apartment building in which Lopez Martinez lived and worked, filed an eviction action against him (the "Landlord

Tenant Action") in Bronx County Civil Court: *Parkash 2125 LLC v. Rolando Martinez, John Doe, and Jane Doe*, No. LT-3036349/BX.[1] *See* Docs. 54-1, 54 at 2.

On July 19, 2024, the parties filed a joint pretrial order, Doc. 39, and this Court scheduled the matter for an August 12, 2024 jury trial. Doc. 40. Following multiple trial adjournments, on November 21, 2024, the parties notified the Court that they agreed to proceed to binding arbitration as to all claims, and requesting that the final pretrial conference be adjourned pending arbitration. Doc. 50. On August 29, 2025, the parties informed the Court that they had reached a settlement in principle prior to any arbitration taking place.[2] Doc. 52.

Now before the Court is the parties' motion for approval of their settlement agreement. Doc. 54. For the following reasons, the motion for settlement approval is GRANTED.

I.  **LEGAL STANDARD**

In this Circuit, parties cannot privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor ("DOL"). *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015). The parties therefore must satisfy the Court that their agreement is "fair and reasonable." *Beckert v. Ronirubinov*, No. 15-cv-1951 (PAE), 2015 WL 8773460, at *1 (S.D.N.Y. Dec. 14, 2015) (citation omitted). In determining whether the proposed settlement is fair and reasonable, "a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation

---

[1] Lopez Martinez states that while Defendants obtained an order of eviction on July 3, 2025 in that case, to date, they have not executed it and Lopez Martinez remains in the residence which was provided as part of his employment. Doc. 54 at 2.

[2] The parties stated that they had met with a NAM arbitrator for a pre-arbitration meeting on May 13, 2025, and had tentatively scheduled a 4-day arbitration to take place in November 2025. Doc. 52. However, on August 26, 2025, they reached a settlement in principle. *Id.*

2

risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Id.* (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

Courts may reject a proposed FLSA settlement if the parties do not provide the basis for the recovery figure, if they fail to include documentation supporting the reasonableness of the attorneys' fees, or if the settlement agreement includes impermissible provisions such as restrictive confidentiality clauses or overbroad releases. *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176–82 (S.D.N.Y. 2015), cited with approval in *Cheeks*, 796 F.3d at 205–06.

## II. DISCUSSION

### A. Range of Recovery

The proposed settlement agreement provides a total recovery of $40,000.00.[3] Docs. 54 at 2, 54-1 § 1. Pursuant to the agreement, Lopez Martinez's counsel will receive approximately one third of the total settlement amount, specifically, $11,967.53 in attorneys' fees and costs. Doc. 27 at 3. Based on this amount, the Court calculates that Lopez Martinez will receive $28,032.47.

Lopez Martinez does not state specifically what his maximum recovery would be for unpaid wages—and his complaint does not indicate how much he was claiming in unpaid wages—however he states: "While the final settlement amount of [Lopez Martinez's] FLSA claims is substantially less than his maximum possible recovery, the parties believe this to be a fair resolution of this matter because of the complicated nature of this case stemming from Defendants' counterclaims against [him], which could

---

[3] The agreement provides that Defendants will pay the first $30,000 within two weeks after execution of the agreement, then pay the remaining $10,000 on December 31, 2025, so long as Lopez Martinez vacates the residence where he lived and worked for Defendants by that date. Doc. 54-1 §§ 1(a), (c). The agreement also provides that Defendants may deduct from the $10,000 payment the cost of removing, transporting, or disposing of any personal property that Lopez Martinez leaves behind. *Id.* §§ 2(a)(i), (iii).

ultimately have led to potentially significant liability against [Lopez Martinez]." Doc. 54 at 3.

The Court finds that the proposed settlement amount is fair and reasonable. *See Khan v. Young Adult Institute, Inc.*, No. 18-cv-2824 (HBP), 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018) (collecting cases of reasonable FLSA settlements ranging from 25% to 40% of plaintiff's maximum recovery). There is value to Lopez Martinez receiving a settlement without experiencing the risks and delays inherent in litigation, including because Defendants asserted counterclaims against him. Lopez Martinez states that he desires to resolve his FLSA claims now, to avoid waiting any additional time and to eliminate risk and uncertainty, because if the case were to proceed to arbitration or trial, "even in the event that his testimony [were to be] credited over Defendants' testimony and records, [Lopez Martinez] would still have to collect on the judgment and would still face the risk that Defendants might be unable to fully satisfy whatever judgment might be obtained at trial." Doc. 54 at 3. Both parties believe the settlement is reasonable in light of the uncertainties and the anticipated burdens, risks, and expenses of litigation. *Id.*

"Furthermore, the adversarial nature of a litigated FLSA case is typically an adequate indicator of the fairness of the settlement, and '[i]f the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.'" *Palma Flores v. M Culinary Concepts, Inc.*, No. 19-cv-1229 (ER), 2019 WL 6683827, at *2 (S.D.N.Y. Dec. 6, 2019) (citation omitted). In light of the above-mentioned uncertainties and the risk of litigation, the settlement resolves bona fide disputes and reflects a reasonable compromise that fairly compensates Lopez Martinez. *See Garcia v. Good for Life by 81, Inc.*, No. 17-cv-7228 (BCM), 2018 WL 3559171, at *2 (S.D.N.Y. July 12, 2018) (citation omitted) (concluding that settlement amount was a "reasonable compromise of disputed issues"). And the settlement resulted from arm's

4

length negotiations in which the parties were represented by experienced wage and hour attorneys. *See* Doc. 54 at 4.

Accordingly, the Court finds that the proposed settlement amount is fair and reasonable.

### B. Attorneys' Fees & Costs

The Court concludes that the proposed attorneys' fees and costs are reasonable. Lopez Martinez's counsel will receive $11,967.53 in attorneys' fees, after recovery of $4,097.40 of costs incurred, which is approximately one third of the settlement. *Id.* This is a reasonable percentage, as "courts in this District routinely award one third of a settlement fund as a reasonable fee in FLSA cases." *Lazo v. Kim's Nails at York Ave., Inc.*, No. 17-cv-3302 (AJN), 2019 WL 95638, at *2 (S.D.N.Y. Jan. 2, 2019) (citation omitted). Nonetheless, "courts in this circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees." *Id.* "The lodestar amount is 'the product of a reasonable hourly rate and the reasonable number of hours required by the case.'" *Id.* (quoting *Gaia House Mezz LLC v. State St. Bank & Trust Company*, No. 11-cv-3186 (TPG), 2014 WL 3955178, at *1 (S.D.N.Y. Aug. 13, 2014)).

Lopez Martinez's counsel has submitted billing records for two attorneys in this case: Michael Samuel, a founding partner of The Samuel Law Firm, who billed at a rate of $500, and Andrew D. Beresin,[4] who billed at a rate of $400 per hour. Doc. 54 at 4.

The Court finds that both hourly rates of $500 and $400 are reasonable. *See Redzepagic v. Hammer*, 14-cv-9808 (ER), 2017 WL 1951865, at *2 n.2 (S.D.N.Y. May 8, 2017) (approving named partner's billing rate of $500.00 per hour); *see also Bin Gao v. Jian Song Shi*, No. 18-cv-2708 (ARR), 2021 WL 1949275, at *17 (E.D.N.Y. Apr. 30, 2021) (noting that several 2021 decisions pursuant to *Cheeks v. Freeport Pancake House,*

---

[4] In his letter, Samuel refers to Beresin as his colleague, and he states Beresin "has been admitted to practice here since 1992, and has been litigating wage and hour cases for the past five years." Doc. 54 at 4.

5

*Inc.*, approved hourly rates of $300 to $450 for partners). Samuel's and Beresin's hourly rates are commensurate with other similarly-experienced partners in the field.

Samuel spent approximately 19.9 hours on this case at a $500 hourly rate, and Beresin spent approximately 26.2 on this case at a $400 hourly rate, which results in a lodestar of $20,430. *See* Doc. 54-2. The lodestar of $20,430.00, compared to the requested $11,967.53 of the settlement, results in a lodestar multiplier of approximately 0.59. Courts in this District have made clear that "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases." *Fujiwara v. Sushi Yasuda Limited*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014). Accordingly, the Court accepts this multiplier of 0.59 and determines that the $11,967.53 in attorneys' fees and costs is reasonable under the circumstances.

### C. Other Provisions

The Court finds all other provisions of the settlement agreement to be fair and reasonable. First, with respect to Lopez Martinez's obligations under the agreement, the release discharges Defendants from "all unpaid wage causes of action[], claims, and damages that [Lopez Martinez] has or could have had against [Defendant] . . . including but not limited to any claims associated with his employment with Defendants and the causes of action plead in the Landlord Tenant Action." Doc. 54-1 § 3(c). This provision appropriately releases claims pursuant to the FLSA, NYLL, and Lopez Martinez's wage-and-hour allegations arising out of his employment with Defendants. *See Doe v. Solera Capital LLC*, No. 18-cv-1769 (ER), 2021 WL 568806, at *1 (S.D.N.Y. Jan. 20, 2021) ("factors that preclude approval include the presence of an overly broad release that waives claims beyond those related to wage-and-hour issues"). While the provision additionally releases unpaid wage claims related to the Landlord Tenant Action, the Court finds that this release is adequately narrow. *Cf. Nights of Cabiria, LLC*, 96 F. Supp. 3d at 181 (finding that courts typically reject broad releases that "waive practically any

6

possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues").

Second, the agreement contains no confidentiality provision. *See* 54-1 § 9.

Third, although the agreement contains a non-disparagement clause, the Court finds that it is adequately tailored because it is mutual and applies only to false statements. *Duran v. C & J Bros., Inc.*, No. 22 Civ. 387 (JGLC), 2023 WL 5769493, at *3 (S.D.N.Y. Sept. 7, 2023) ("[C]ourts regularly reject these provisions when they are not mutual and do not include a carve-out allowing FLSA plaintiffs to make truthful statements about their experience litigating their case."). The non-disparagement clause bars both parties from making false statements about one another that are derogatory, disparaging, or defamatory, and it specifically allows Lopez Martinez "to make truthful statements about his experience litigating this case." Doc. 54-1 § 9(a), (b). *See Weng v. T&W Restaurant, Inc.*, No. 15 Civ. 8167 (PAE) (BCM), 2016 WL 3566849, at *4 (S.D.N.Y. June 22, 2016) ("While 'not every non-disparagement clause in an FLSA settlement is *per se* objectionable,' a clause which bars a plaintiff from making negative statements about a defendant 'must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case.'" (quoting *Lopez v. Ploy Dee, Inc.*, No. 15 Civ. 647 (AJN), 2016 WL 1626631, at *3 (S.D.N.Y. Apr. 21, 2016)); *cf. Bonaventura v. Gear Fitness One NY Plaza LLC*, No. 17 Civ. 2168 (ER), 2021 WL 1907368, at *2 (S.D.N.Y. Apr. 12, 2021) ("[T]he non-disparagement provision bars [plaintiff] from making some truthful statements relating to his wage-and-hour claims that may be deemed critical or disparaging, and therefore is not fair and reasonable."). Therefore, the Court finds this provision reasonable.

### III. CONCLUSION

For the foregoing reasons, the motion for settlement approval is GRANTED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 54, and close the case.

It is SO ORDERED.

Dated:  October 6, 2025
        New York, New York

_____
EDGARDO RAMOS, U.S.D.J.

8